IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.: 5:09-CV-22

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| **SHELBY DEAN MARTIN, D. MARTIN ENTERPRISES, INC. and DM VENTURES, LLC,** | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

ORDER SETTING DISGORGEMENT AND CIVIL PENALTIES AGAINST
DEFENDANTS SHELBY DEAN MARTIN, D. MARTIN ENTERPRISES, INC.
and DM VENTURES, LLC

On March 6, 2009 the Securities and Exchange Commission filed a Complaint against Defendants Shelby Dean Martin ("Martin"), D. Martin Enterprises, Inc. ("DM Enterprises"), and DM Ventures, LLC ("DM Ventures") seeking injunctive and other legal and equitable relief for violations of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)], Section 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)], Section 10b(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5], Section 206(1) of the Advisers Act [15 U.S.C. 80b-6(1)], and Section 206(2) of the Advisers Act [15 U.S.C. §80b-6(2).]

On September 24, 2009 the Securities and Exchange Commission filed a motion for permanent injunction and other relief. Defendants consented to the Court's jurisdiction over

Defendants, the subject matter of the action without admitting or denying the allegations of the Complaint (except as to jurisdiction), consented to the entry of an "Order of Permanent Injunction and Other Relief as to Defendants Martin, DM Enterprises, and DM Ventures" without admitting or denying the allegations of the complaint, waived findings of fact and conclusions of law, and waived any right to appeal from the Order granting the motion for permanent injunction. An Order permanently enjoining Defendants from violations of 17(a)of the Securities Act of 1933("Securities Act") [15 U.S.C. § 77q(a)], Section 10b of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b), and Rule 10b-5 thereunder[17 C.F.R. § 240.10b-5] was entered on December 21, 2009. The Order mandated that:

> "In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendants may not challenge the validity of the Consent or this Final Judgment; (b) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (c) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties."

For the purposes of assessing the disgorgement of ill-gotten gains, prejudgment interest, and civil penalties, Defendants' consent to the Order of Permanent Injunction precludes them from challenging the validity of the Consent or the Order.

The Securities and Exchange Commission has moved this Court to set disgorgement and civil penalties against Defendants Shelby Dean Martin, D. Martin Enterprises, Inc., and DM Ventures, LLC. Based on the Commission's memorandum in support of its motion, the record in this case, and the Court being otherwise advised in the premises, and it is hereby:

2

ORDERED that Plaintiff's motion to set disgorgement and civil penalties is GRANTED and the amount of disgorgement and civil penalties set forth in this order is hereby determined. Accordingly, the Court enters the following findings of fact, conclusions of law, and orders.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore further directs the entry of Findings of Fact, Conclusions of Law, and an Order of Disgorgement and Civil Monetary Penalties, as provided herein.

**A.     Jurisdiction and Venue**

1.      This court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. 77v], Section 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa] and Section 214 of the Advisers Act[15 U.S.C. 80b-14].

2.      Defendants, directly and indirectly, made use of the mails, the means and instruments of transportation and communication in interstate commerce and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in the complaint.

3.      Venue properly lies with the Court because certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act, the Exchange Act and the Advisers Act occurred in the Western District of North Carolina. In addition, Defendant Martin resides in the Western District of North Carolina. Defendants DM Enterprises and DM Ventures maintain offices in the Western District of North Carolina.

B.   **Findings of Fact**

4.   Defendant Shelby Dean Martin resides in Mooresville, North Carolina. Martin has served as President of DM Enterprises since its inception in 1985, and as managing member of DM Ventures.

5.   DM Enterprises, Inc., is a North Carolina corporation formed in 1985 that has its principal place of business in Mooresville, North Carolina. DM Enterprises has never been registered with the Commission in any capacity.

6.   DM Ventures, LLC is an entity that was formerly registered in the State of Nevada as a limited liability company with its principal place of business in Mooresville, North Carolina. Nevada revoked DM Ventures' registration in April 2005. DM Ventures has never been registered with the Commission in any capacity.

7.   Since at least 1998, Martin, operating through DM Enterprises and DM Ventures, raised approximately $17 million from 185 investors. Martin received investments from individuals and/or entities located mostly in North Carolina, as well as several other states including South Carolina, Georgia, Virginia, and Colorado.

8.   In October 2008, the North Carolina Securities Division began receiving complaints from North Carolina residents about investments made with Martin, DM Enterprises, and DM Ventures. Specifically, the complaints alleged that Martin executed promissory notes to investors guaranteeing a positive return on investment and promising to pay interest at a rate between 15% and 50% per annum.

9.   The securities Martin, DM Enterprises, and/or DM Ventures issued were never registered for sale in the State of North Carolina, and the State of North Carolina Securities

Division had never received notice claiming exemptions for the offerings.

10. Martin told most of the people who invested with him that their funds would be invested in private companies he intended to take public in the near future, thereby enhancing their returns. Martin told other investors that their funds would be used to provide working capital to companies in financial distress. With others, Martin claimed investments would be used to purchase stock, identifying the target companies as Ball Products, Omnics International and Global. Several times, Martin simply obtained investor money without saying how he would achieve the returns he promised.

11. Generally, Martin told investors that they would not lose their principal investment and that they would receive anywhere from a 15% to 50% rate of return on their investment per annum, for the term of their investment. Martin personally guaranteed the promissory notes he gave investors and, in several instances, told investors that their principal was insured. In a few instances, the promissory note given to investors were made in the name of DM Enterprises.

12. Martin failed to tell investors that their funds would not be invested as described. He also did not tell investors that investments from later investors would be used to pay returns to earlier investors. Moreover, Martin did not disclose that he used investor funds for his personal benefit.

13. Martin met most investors through word of mouth, often telling potential investors that he was in the business of taking companies public. On occasion, Martin wrote to investors updating the status of their investments using DM Enterprises letterhead.

14. Martin pooled investor funds in the bank accounts of DM Enterprises and DM Ventures. Martin used funds as they were received from later investors to pay the returns he

promised to earlier investors.

15. North Carolina securities investigators reviewed bank records for Martin, DM Enterprises, and DM Ventures between December 2004 and September 2008. This investigation revealed that, during that time, Martin deposited funds from approximately 185 investors and that these investors invested approximately $17 million.

16. Bank records also revealed that Martin was not investing these funds as he represented to investors. Rather, Martin used new investment money to pay returns to prior investors, in addition to diverting investor funds for personal benefit.

17. Bank account records for "S. Dean Martin Investment Account", "D. Martin Enterprises, Inc.", and "DM Ventures, LLC" at BB&T Bank revealed that Martin converted approximately $428,000 of investor monies to his own personal use and benefit between January 2004 and September 2008.

18. Investors returned claim forms to both the Commission and the Securities Division of North Carolina that detailed the investors' principal investment in, and return payments from, Martin's investments. From these responses, investigators determined that the total amount of principal losses investors claim exceeds $16 million.

19. Martin failed to tell investors that; (a) he was not investing their money as he claimed in taking companies public or to provide working capital for companies; (b) he was using funds from later investors to pay returns to earlier investors; and (c) he was using investor funds for his personal benefit.

20. Martin told an investor that investments made with him would be used to provide working capital for a company. Subsequently, in March 2001, the investor wrote DM Ventures a check which Martin deposited into his bank account.

21. Soon thereafter, the investor wrote a second check to DM Ventures after Martin told him that the investment would provide working capital for the same company.

22. When the investor did not receive the promised returns on his investment, Martin agreed to give the investor a promissory note in the amount of $200,000, which he personally guaranteed. This note promised a 25% return and had a twelve-month term.

23. In total, the investor gave Martin $700,000, most of which has never been repaid.

24. Another investor met Martin through a mutual friend and invested more than $450,000 between 1998 and 2003 in a series of transactions where Martin gave him a promissory note purporting to pay a 20% annual return. Martin told the investor that he would personally guarantee the investment and that the investor's principal would be insured. While Martin guaranteed the investor a 20% annual return, he did not explain to the investor how the return would be generated.

25. Martin told at least one other investor that the funds would be used to provide working capital to a company. Between 2000 and 2008, the investor made a series of investments totaling $1,185,000, which Martin guaranteed would pay 25% per year. In one instance in 2004, Martin told the investor he would be investing in a profitable company, when, in fact, the company disclosed in its public filings that it had lost more than $2 million in that year.

26. Martin never told any investor interviewed by North Carolina securities investigators that he operated a Ponzi scheme and never disclosed that investor returns were coming from later investors' monies.

27. Contrary to Martin's claims to investors, Martin did not invest much of the money in the companies as he claimed. Instead, he diverted substantial investors funds for his

personal use and used new investor funds to pay returns to existing investors.

**C.     Conclusions of Law**

   *i).     Disgorgement in the amount of $428,000 and prejudgment interest in the amount of $42,382.7 is appropriate.*

   28.     This court has the power to award equitable relief in the form of disgorgement, pursuant to 15 U.S.C. § 78u(d)(5), as Defendants have violated provisions of 15 U.S.C. §78.

   29.     From at least 1998 through the present, the Defendants Martin, DM Enterprises and DM Ventures, in the offer of sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and artifices to defraud purchasers of such securities.

   29.     Defendants knowingly, intentionally, and recklessly engaged in the aforementioned devices, schemes and artifices with scienter, that is, with an intent to defraud.

   30.     By the conduct described in paragraphs 1 through 29 above, Martin, individually and as the agent of DM Enterprises and DM Ventures fraudulently obtained over $16 million of investor monies and converted at least $480,000 of it for his personal use.

   *ii).     Imposing a third-tier civil penalty is appropriate*

   31.     Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] authorize the Securities and Exchange Commission to seek court orders imposing civil penalties against any person who has violated those acts.

   32.     Based on the conduct described in paragraphs 1 through 27 above, a civil penalty is appropriate in this case.

33. A third-tier penalty requires conduct that "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and the act or omission must have "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons or resulted in substantial pecuniary gain to the person who committed the act or omission." 15 U.S.C. § 78u-2(b)(2)-(3).

34. Defendant Martin's conduct clearly "involved fraud, deceit, manipulation, or deliberate disregard of a regulatory requirement" as he operated a "Ponzi scheme" where he deliberately misled investors into giving him money under the beliefs that funds would be invested in legitimate businesses. In reality, Martin used subsequent investments to pay earlier investors in a "Ponzi" style scheme to enrich himself, exhibiting complete disregard for securities laws and the regulatory system. Substantial losses were incurred as a result of Martin's actions as at least 185 investors were defrauded in Martin's scheme resulting in a combined loss of over $16 million dollars.

35. Third-tier civil penalties must also be in the public interest. A court "may" look at six factors in determining whether a civil penalty is in the public interest. 15 U.S.C. § 78u-2(a). Five of the six factors that "may" be relevant to the public interest determination are present in this case.

> (1) 15 U.S.C. § 78u-2(a)(1) is satisfied because the Ponzi scheme operated by Defendants' involved an extensive and repeated system of fraud and deceit.
>
> (2) 15 U.S.C. § 78u-2(a)(2) is satisfied because Defendants' conduct resulted in at least 185 investors losing at least $16 million.
>
> (3) 15 U.S.C. § 78u-2(a)(3) is satisfied because Defendant Martin was unjustly enriched when he converted at least $480,000 of investors money into his personal bank account.

> (4) 15 U.S.C. § 78u-2(a)(4) requiring a finding of previous violations of Federal securities laws, State securities laws, or the rules of a self-regulatory organization is the only one of the six factors absent.
>
> (5) 15 U.S.C. § 78u-2(a)(5) is satisfied because the need for deterrence is strong because of other recent high-profile "Ponzi schemes" and the need to ensure investors that regulatory laws will be enforced.
>
> (6) 15 U.S.C. § 78u-2(a)(6) is satisfied because justice requires imposing such a penalty in light of the malice and deliberate deceit required to knowingly defraud numerous investors over an extended period of time.

36. Because Defendants' conduct "involved fraud, deceit, manipulation, and deliberate or reckless disregard of a regulatory requirement", and Defendants' acts "directly resulted in substantial losses" to others, and because it is in the public interest to award a civil penalty this Court will impose a third-tier civil penalty on Defendants in accordance with Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## II. ORDER FOR RELIEF

**A.  Disgorgement**

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

36. Defendants Martin, DM Enterprises, and DM Ventures be required to disgorge money in the amount of $428,000 plus post-judgment interest, representing the amount Martin paid himself from January 2004 until September 2008.

36. Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

37. Defendants are further ordered to disgorge $42,382.78 in prejudgment interest, calculated from March 1, 2008 through April 1, 2010, based upon IRS tax underpayment rates.

**B. Civil Penalties**

IT IS FURTHER ORDERED that:

38. Based on the conduct described in paragraphs 1 through 27, it is appropriate to impose a third-tier civil penalty in the amount of $130,000.

38. Defendants Martin, DM Ventures, and DM Enterprises shall pay a third-tier civil monetary penalty, jointly and severally, in the amount of $130,000. This amount represents the maximum penalty for a natural person adjusted for inflation pursuant to 17 C.F.R. § 201.1003.

39. Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

Signed: November 18, 2010

Richard L. Voorhees
United States District Judge

11